## STRADLING et v PRINTZ

Ohio Appeals, 2nd Dist, Champaign Co
No. 86.  Decided May 23, 1931

A. C. Bollinger, St. Paris, and C. V. Frome, Urbana, for Stradling et.

E. H. Biggs, D. M. Gibbs, Columbus, for Printz.

ALLREAD, J.

It will be observed that under this statute, two issues are presented, first, whether the deceased Grube was the father of Goldie Fern Saylor-Grube, and second, whether he acknowledged her as his child, as provided in said statute.

It appears from the evidence that Goldie Fern was born July 15, 1887, that prior to her birth the said Jacob T. Grube called upon the mother regularly for a period of about two years before the birth of said child and the evidence further shows that said Grube kept up his calls after the birth of said child. A number of the nearby neighbors, who are still living, have been introduced as witnesses and have testified to the attentions paid by Jacob T. Grube not only to Dora, the mother, but to the child, Goldie Fern, after she was born. A number of these neighbors are people who had special opportunity to observe these attentions. One, a lady who lived in the house, is now married (a Mrs. Edgars) testified to the treatment of the child by the

father and to his gifts at various times to the child.

The mother was accustomed to say to the child when Grube appeared, "There is your daddy" and Grube would take the child in his arms and caress it. This happened frequently during the period following the birth of the child for several years. One witness, who was near the age of Grube, testified to calling Grube's attention to the condition in which the mother was at the time of the conversation and he said that Grube admitted that he was the father of the child and that he did not dispute that fact, which equivalent to acknowledgment.

There are other witnesses who testify in a similar strain. In this court, the parties secured the testimony of a sister of Jacob T. Grube, who testified that when Dora May Saylor was sick, about the time when Goldie Fern was born, that Grube asked her to take a package of money and give it to the said Dora, which she did, and that Dora May took the money and placed it under her pillow. There is other testimony given by persons who lived nearby at the time, whose testimony corroborates these claims.

The evidence tends to prove a conflict in the use of names, as applied to Goldie Fern. The evidence shows that at times of her birth and shortly thereafter her name was given as Goldie Fern Saylor. It is clear that Goldie Fern was later called "Grube" on many occasions, evidently by consent and acquiescence of Jacob T. Grube. Such evidence is of a high order and tends to prove acknowledgment and consent on the part of Grube as to paternity.

There are additional witnesses brought in this court whose testimony tends to prove the parentage in Jacob T. Grube, as well from circumstances as from the declarations of Grube himself. It is true that there is conflicting evidence upon this subject.

Evidence has been introduced tending to prove the declarations of Jacob T. Grube that he had no children. This evidence is in the nature of self-serving declarations and the right to offer it is objected to. We find, however, that the declarations so made may be considered competent but must be considered in the light of Grube's interest at the time they were made.

There has also been introduced in evidence the old family Bible. In this Bible it appears that in the record of births the name was first written as "Goldie Fern Saylor." The "Saylor" was afterwards erased and "Grube" was written over the word "Saylor". The Bible was in the possession of the Miller family during the life of Dora and then it went into the possession of Goldie Fern and still later into the posses-

sion of Grace Printz where it was produced on the trial in the form shown in the evidence. The only inference to be drawn from the record of the Bible is that the family originally named the child Goldie Fern Saylor and that afterwards they erased the name "Saylor" and added "Grube." Mrs. Edgars saw the record when she lived in the family of Dora May and claimed that it had then been changed by the erasure of the word "Saylor" and the insertion of "Grube" therein, so that there is evidence tending to prove that the family Bible record is an ancient one and that the records of the birth of Goldie Fern as changed is ancient. The birth records of Champaign County may be reconciled on the same theory. It does not appear that such record was made by the mother of Goldie Fern so as to charge her with the same. The evidence entitled to greatest weight is that in the petition in the divorce case the name of Goldie was omitted therefrom. Under the present theory Goldie had been acknowledged and while her birth was illegitimate she became legitimate by the acknowledgement of Grube. This petition upon its face is therefore inconsistent with the claim of Goldie Fern to the effect that she became by the marriage of Jacob T. Grube a legitimate daughter, but as Goldie Fern was not a party to the divorce proceedings she would not be bound by the record and that such record is opposed to the declarations of both her mother and Jacob T. Grube. The record of that case can have no great effect as evidence upon the paternity or recognition of Goldie Fern. In 1905 when Goldie Fern married to Straddling the application was signed by the mother. No affidavit was required. The father was divorced; Goldie Fern was then above the age of sixteen years.

We can see nothing in this record which can be considered on the subject of the paternity of Jacob T. Grube and of his responsibility for Goldie Fern Grube.

There are many witnesses whose testimony has been considered in this court. We think there is no doubt from all the evidence, that Jacob T. Grube was the father of said child.

It appears that at a subsequent date the said Dora May Saylor was about to give birth to a second child and that as a result of the differences which then arose said Grube offered to marry the said Dora May Saylor and did marry her a short time prior to the birth of the second child, known in this case as Grace M. Grube, now Printz. The evidence tends to prove that Grube stayed at the Saylor home over the night of the wedding and left the next day. There is testimony to the effect that a short time

after the birth of Grace M. Grube, the said Jacob T. Grube had a conversation with Dora May Grube, his wife, as to their living together; that Grube insisted that she, his wife, deed to him, Grube, the land she then owned, as he did not want to farm the place if it were owned by his wife. This she declined to do and there was no further communication on that subject between them.

There is some evidence as to the acknowledgement by Grube of the parentage of Goldie Fern Grube subsequent to the marriage. Even in case it is held essential to prove an acknowledgement after the marriage, we can at least come down to the marriage, with the fact clearly established that Grube up to that time acknowledged that he was the father of the first daughter, and we may concede also of the second. We may also concede that the marriage of Grube was for the purpose of giving legitimacy to the children of Dora May. There could be no other apparent purpose.

The acts of acknowledgement after the marriage are somewhat meager and are not clearly shown. We think, however, that the testimony of one witness, Mrs. Edgars, is to the effect that Grube stayed at the home of his wife the night of the wedding and in view of the fact that Goldie Fern was then a member of the wife's family, this may be some evidence that he intended to and did acknowledge the children that were then in the family. By the marriage it must be assumed that he intended to treat the newer children then in the family as members of the family and as his own and with this intention in mind Grube stayed at the Saylor home at least one night.

It may also be admitted that in the conversation after the birth of the second daughter, when Grube discussed with his wife the question of whether she would convey her real estate to him, it must be assumed that he did this in view of the fact that the two daughters were then at home, one was seven years old and the other was a small babe, and it must have been with the idea that he was intending to recognize and provide for the two daughters.

The main case which is relied upon is that of **Eichorn v Zedaker, 109th Oh St 609.** This case was to a certain extent the opposite of the case under consideration. The evidence showed that after the marriage there was abundant acknowledgement. The question was whether there was enough evidence to show the parentage of the child. The syllabus of the case is as follows:

"By virtue of §8591, **GC,** in order to establish legitimacy of a child born out of wedlock, it is necessary to prove, not only the acknowledgement of the husband after the marriage, but also that the husband is, in fact, the father of said child. An acknowledgement, clearly and inequivocably made, showing the recognition of such child as his child, is sufficient to establish the parentage."

While this case holds that acknowledgement of the legitimacy of a child by the father, after the marriage, may be sufficient to make out that feature of the case and also sufficient, if the acknowledgement is sufficiently clear and inequivocal, to prove the parentage. There is nothing in this case which holds that an acknowledgement by the parent must be made after the marriage, to sustain the obligation created by the statute and we are inclined to doubt whether that obligation is imposed by the statute, but even if it is, we think there is enough in the evidence in this case to make out the claim Jacob T. Grube acknowledged Goldie as his daughter after marriage.

The claim of Grace May Printz that she is entitled to the sole heirship of Jacob T. Grube is a legal claim. There were seven years difference between the times of the births of the two daughters. Grace's birth was after the marriage between her mother and Jacob T. Grube and therefore her claim had the stamp of legitimacy. After her birth she lived with her mother and her older sister and the girls were treated in all respects in the family as though they were full sisters. After the death of the mother, Dora, Grace lived in the family of Goldie Fern up until the death of their father, Jacob T. Grube when by subsequent investigation it was found according to her claim that she was the sole heir of Jacob T. Grube, although during all the years previously she had considered her sister as a full sister.

The evidence as to acknowledgement by Jacob T. Grube after the marriage may be thus stated:

(1) Gifts to Goldie at the time of and subsequent to the marriage.

(2) Subsequent to the marriage Grube made a demand on the mother of Goldie Fern to transfer her property to him for appearance sake. But out of this arrangement it must be assumed that Grube intended to provide for the children.

(3) By the marriage of the mother under the circumstances Grube must be held to have assumed to make provision for the children of the family.

We are, therefore, of opinion that the plaintiffs as the legal heirs of Mrs. Straddling are entitled to one-half interest of the

real estate as prayed for in the petition. Judgment accordingly.

HORNBECK and KUNKLE, JJ, concur.